UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OUTOKUMPU STAINLESS USA, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-66 |
| | § | |
| M/V VEGALAND, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court are Nordana Line A/S's ("Nordana") motion for partial summary judgment (Dkt. 14) and plaintiff's motion for partial summary judgment (Dkt. 27). After considering the parties' briefing, record evidence, and applicable law, the court is of the opinion that Nordana's motion for partial summary judgment should be GRANTED and plaintiff's motion for partial summary judgment should be DENIED.

**I. BACKGROUND**

This maritime case stems from damaged cargo being transported by sea from Genoa, Italy to Houston, Texas. Dkt. 1, p. 7. Plaintiff, a large producer of stainless steel, shipped a 63-ton tilt drive industrial machine[1] for installation in its Melt Shop facility in Alabama through Nordana as the common carrier and time charterer of the M/V VEGALAND. *Id.*; Dkt. 14, Ex. A. Before reaching Nordana, the melt shop was prepared for shipment by Siemens - VAI Metal Technologies ("Siemens"), the seller of the melt shop. *Id.* at Ex. B. It was wrapped in plastic sheeting, enclosed in a crate made from wooden slats with several inches separating each wooden slat, and mounted to a skid. *Id.* at Ex. D. The melt shop was shipped along with two other wooden crates containing components for the melt shop. *Id.* at Ex. A. Consistent with the summary packaging slip prepared by Siemens, Nordana issued a bill of lading describing the packages to be shipped as 3 "crates." *Id.*

---

[1] For ease of reference and consistent with the shipping documents in this case, the cargo at issue will be referred to as a "melt shop."

at Exs. A-B. Plaintiff did not declare the value of the cargo on the face of the bill of lading. *Id.* at Ex. A. While in transit, the M/V VEGALAND encountered heavy weather. Dkt. 27, Ex. I. When the M/V VEGALAND reached the Port of Houston, the cargo was found tipped over on its side. Dkt. 1, pp. 8-9. The melt shop experienced significant damage. *Id.*

Plaintiff filed suit in admiralty on January 9, 2013, claiming $566,740.80 in actual damages to the melt shop. *Id.* at 9. Plaintiff and Nordana filed cross-motions for partial summary judgment seeking a determination regarding whether the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, *et seq.*, limits Nordana's liability to $500 per package. Nordana submits that the physical packaging of the cargo and the bill of lading establish, as a matter of law, that the melt shop was a single package under COGSA. Plaintiff counters that the melt shop does not constitute a package, and further, that Nordana is not entitled to limit its liability because it did not give plaintiff a fair opportunity to declare a higher value for the cargo.

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The substantive law

2

determines which facts are material in each case. Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

If there are no issues of witness credibility, "the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Tamini v. Salen Dry Cargo AB*, 866 F.2d 741, 742-43 (5th Cir. 1989) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978)). Under these circumstances, the judge, who is also the trier of fact in an admiralty case, may be warranted in deciding a factual question as a matter of law. *Id.* "The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial." *Id.*

### III. ANALYSIS

Nordana seeks partial summary judgment solely on the issue of whether its liability for the damaged cargo is limited to $500 per package under COGSA. Nordana maintains that the melt shop was packaged for shipping and that plaintiff failed to declare a higher value for the cargo on the bill of lading in order to avoid additional ad valorem freight charges, despite being given a fair opportunity to do so. Plaintiff responds that the melt shop does not constitute a package because the nature and value of the equipment were apparent to Nordana such that it should not be entitled to limit its liability to $500. Plaintiff also contends it was not given a fair opportunity to declare a higher value, which should render void the limitation clause in the bill of lading. Additionally, plaintiff seeks to avoid the limitation of liability by making claims of geographic deviation, improper stowage, and spoliation of evidence. The court will address the arguments relevant to the question of whether the COGSA package limitation applies.

Both parties agree that COGSA applies. COGSA "applies to a carrier engaged in the carriage of goods to or from any port in the United States." 46 U.S.C. § 30702. The COGSA package limitation provides, in relevant part:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

*Id.* at § 30701, note § 4(5).

### A. Package

The parties dispute whether the melt shop was a package for purposes of COGSA's $500 per package limitation. Specifically, plaintiff argues that the contents of the crate were visible to Nordana, Nordana was provided photographs and drawings of the melt shop, and the content of the crate was sufficiently described in the bill of lading to put Nordana on notice that the value of the melt shop exceeded $500. Further, the parties did not evidence an intent that the melt shop was a package because the package column was left blank in the bill of lading and the freight charges were calculated on a weight and measure basis. Nordana, however, argues that the cargo was pre-packaged for shipment. It was fully wrapped in plastic, surrounded on all sides by wooden slats, and mounted to H-beams to facilitate lashing.

The limitation of a carrier's liability to $500 per package turns on whether or not the melt shop was a "package." The statute does not provide any guidance as to what constitutes a package; however, the Fifth Circuit and lower courts have construed the term on a case-by-case basis. In determining whether certain cargo constitutes a package under COGSA, courts have focused on whether the cargo was only partially packaged or fully exposed, whether the cargo was prepared to facilitate handling or shipping, and whether the shipping documents evinced an intent by the parties

4

that the cargo be treated as a package. *See e.g.*, *Tamini*, 866 F.2d 741 (5th Cir. 1989); *Croft & Scully Co. v. M/V SKULPTOR VUCHETICH*, 664 F.2d 1277 (5th Cir. 1982); *Allstate Ins. Co. v. Inversiones Navieras Imparca, C.A.*, 646 F.2d 169 (5th Cir. 1981).

The packaging of the melt shop in this case and the contents of the bill of lading are not in dispute. The melt shop was generally referred to as one of three "Crates" being shipped from Genoa, Italy to Houston, Texas. The space provided for "No. of Pkgs." was left blank in the bill of lading, but this notation is not determinative. *See Tamini*, 866 F.2d at 743 (notation in the column for "Pkgs." is not determinative). These facts provide the only unequivocal support for plaintiff's position that the melt shop was not a package. In all other respects, the melt shop was prepared and delivered to Nordana as a package. Specifically, the melt shop was wrapped fully in plastic, it was then fully enclosed in a crate made of wooden slats. While there was space in between each wooden slat, the plastic wrap was all that could be seen between the spaces in the slats. Cargo does not have to be fully enclosed to be considered a package. *Calmaquip Eng'g W. Hemisphere Corp. v. W. Coast Carriers*, 650 F.2d 633, 639 (5th Cir. 1981). Further, the melt shop was attached to H-beams in order to facilitate shipping. Thus, the majority of factors considered by the Fifth Circuit in determining whether cargo is a package for purposes of COGSA weigh in favor of a finding that the melt shop was a package.

Plaintiff relies on the Fifth Circuit's decision in *Tamini* to support its position that the melt shop does not constitute a package. In *Tamini*, the Fifth Circuit upheld the summary judgment ruling that a portable rotary drilling rig damaged during the loading of a vessel was not a single package under COGSA.[2] *Tamini*, 866 F.2d at 743. The bill of lading described the cargo as "One unit . . .

---

[2] Plaintiff's reliance on *Aggreko, Inc. v. LEP Int'l, Ltd.*, 780 F. Supp. 429 (S.D. Tex. 1991), for the proposition that the limitation does not apply if the "carrier had clear, unequivocal notice of the container's contents" is also unavailing. *Aggreko*, 780 F. Supp. at 430. In dicta, the court stated this principle relying on *Croft & Scully Co. v. M/V SKULPTOR VUCHETICH*, 664 F.2d 1277 (5th Cir. 1982). A review of *Croft & Scully* reveals that the Fifth Circuit espoused this principle in a context where the carrier provided a container to the shipper and the shipper placed its prepared packages in the container and described such

5

Portable Rotary Drill. Gross Pounds: 62,795" and noted "1" in the "No. of Pkgs." *Id.* at 742. The cargo included 11 other boxes of accessories, for a total of "12 pc." *Id.* In preparation for shipment, the shipper placed wooden crating around vulnerable portions of the drilling rig, covering only a minimal amount of the exterior of the drilling rig. *Id.* Most of the rig, however, was fully exposed. *Id.* Finally, the rig was free-standing, unattached to a skid or other device meant to facilitate shipping. *Id.* The Fifth Circuit found the district court had not erred by finding the rig was not a package, but noted that "the cases have gone both ways . . . where the items shipped are partially packaged." *Id.* at 743.

Like *Tamini*, the case here presents a close call. However, the facts in *Tamini* tipped in favor of a finding that the drilling rig was not a package because the cargo was not enclosed in a container, the rig was mostly exposed, there were no appurtenances attached to the cargo to facilitate handling during transportation, and the transportation charges for the rig were calculated on a weight, not per package, basis. *Id.* The factual circumstances presented here differ from those in *Tamini*. Unlike the cargo in *Tamini*, the melt shop was fully wrapped in plastic and enclosed in a vented wooden slat crate. It was not fully exposed, and it was secured to H-beams designed to facilitate handling during transportation. Further, the freight charges were billed on either a lump sum or weight and measure basis. *Cf.* Dkt. 27, Ex. E *with* Dkt. 27, Ex. K.

Plaintiff urges this court to require the carrier to inquire or implicitly waive its limitation of liability under COGSA if the carrier should have recognized that the cargo was a heavy, valuable piece of equipment. But, that position is not supported by case law or the language of the statute. The statutory limitation places the onus on the shipper to declare a higher value on the face of the

---

packages in the bill of lading. *Croft & Scully*, 664 F.2d at 1281. The statement of law in *Croft & Scully*, as relied upon by the court in *Aggreko*, applies when the carrier provides the shipping container and is put on notice of the contents contained therein. That is not the situation here. Further, the packaging of the cargo and appurtenances attached to the cargo to facilitate shipping in *Aggreko* were very different from those features of plaintiff's cargo here. *Aggreko*, 780 F. Supp. at 430.

bill of lading because "as a matter of business practice . . . [t]he shipper obviously has the best knowledge of the value of the cargo, and is in the best position to determine [whether declaring a higher value or not] would be most efficient from an economic standpoint." *C.A. Articulos Nacionales de Goma Gomaven v. M/V ARAGUA*, 756 F.2d 1156, 1161 (5th Cir. 1985). COGSA contemplates that the shipper is responsible for declaring a higher value, and the carrier cannot be liable for the full value of the cargo when shipper fails to do so.

Moreover, the court in *Dewanchand Ramsaran Indus. (P), Ltd. v. Ports Am. Tex., Inc.*, 2010 WL 707380 (S.D. Tex. Feb. 24, 2010), recently considered whether a 45,000 pound piece of drilling equipment, known as an SCR House, constituted a package under COGSA. 2010 WL 707380, at *1. The SCR House was confined within a metal box, much of the metal box was covered in plywood, a steel skid was mounted to the bottom of the equipment, and foam insulation filled the gaps between the framing. *Id.* Noting that the Fifth Circuit often relies on Second Circuit precedent when interpreting COGSA, the court cited the Second Circuit's definition of "package" as a "class of cargo, irrespective of size, shape, or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods." *Id.* at *9 (quoting *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir. 1968)). Consistent with this definition, the court found the SCR House had a "'common-sense, visual appearance of a package'" because it was partially enclosed in plywood and mounted on a steel skid in preparation for transport. *Id.* (quoting *Crispin Co. v. M/V MORNING PARK*, 578 F. Supp. 359, 360 (S.D. Tex. 1984)). The court also relied on the bill of lading, which reflected the parties' contractual intent that the SCR House was a package, but discounted the plaintiff's argument that the shipping charges were calculated on the basis of weight because "[e]vidence of how the shipping charges were calculated is only relevant as secondary evidence of the parties' intent." *Id.* at *11.

This court agrees with the reasoning in *Ports America*, and despite the size and weight of the

7

equipment, the "common sense, visual appearance" of the melt shop was that of a package. It was fully wrapped in plastic and surrounded on all sides by wooden slats. It was also attached to a base meant to facilitate handling. While the space provided in the bill of lading for number of packages was left blank, the bill of lading described the three pieces of cargo as "crates." The crating, in this case, was done in preparation for shipment before reaching Nordana. And, the calculation of shipping charges is not conclusive. Thus, given the factors considered by the Fifth Circuit and lower courts with respect to what constitutes a "package" for purposes of COGSA, the court finds, as a matter of law, that the melt shop was a package.

  B.  *Fair Opportunity*

Plaintiff also argues that Nordana is not entitled to limit its liability because it did not give plaintiff a fair opportunity to declare a higher value for the cargo. Specifically, the "Freight calculation" paragraph in the "Ad valorem cargo" section of Nordana's Tariff provides that "[d]epending on the rules of the applicable tariff the freight for such cargo will be calculated as a percentage of the value declared by the Shipper." Dkt. 27, Ex. V. Plaintiff suggests this language implies that another tariff existed which was not provided to plaintiff or incorporated into the shipping documents. By failing to provide this additional tariff, plaintiff contends it was not given a choice of definable rates. Nordana disagrees that it was required to give the shipper a listing of all possible rates. Nordana maintains that it was only required to give plaintiff a fair opportunity to declare a higher value, which it did by providing a space in the bill of lading for declaring a higher value and referring plaintiff to the tariff which was on its website and on file with the Federal Maritime Commission. Nordana contends that plaintiff knew the value of cargo but chose not to declare this value in order to avoid higher freight charges.

COGSA limits liability to $500 per package unless the nature and value of the goods have been declared by the shipper and inserted in the bill of lading. 46 U.S.C. § 30701, note § 4(5). *Brown & Root, Inc. v. M/V PEISANDER*, 648 F.2d 415, 420 (5th Cir. 1981). In order for the carrier

8

to benefit from the COGSA limitation, the carrier must provide the shipper with a fair opportunity to avoid the limitation by declaring the package's value and paying additional ad valorem freight. *Id.* The carrier bears the initial burden of showing it offered the shipper a fair opportunity to avoid the limitation. *Couthino, Caro & Co. v. M/V SAVA*, 849 F.2d 166, 169 (5th Cir. 1988). A prima facie case of fair opportunity can be made by introducing, for example, evidence of a published tariff that gave the shipper a choice of definable freight rates. *Brown & Root*, 648 F.2d at 424. If the carrier satisfies the initial burden, the burden then shifts to the shipper to prove that an opportunity to avoid the COGSA limitation did not exist. *Id.*; *Wuerttembergische & Badische Versicherungs-Aktiengesellschaft v. M/V STUTTGART EXPRESS*, 711 F.2d 621, 622 (5th Cir. 1983).

To invoke the package limitation by giving the shipper a fair opportunity to declare a higher value for the cargo, a carrier must provide further evidence beyond incorporation of COGSA into the contract of carriage. *Tradearbed, Inc. v. W. Bulk Carriers K/S*, 374 Fed. Appx. 464, 473 (5th Cir. 2010) (citing *Couthino*, 849 F.2d at 171 n.6 ("[W]e have not held . . . that the mere incorporation of COGSA into a bill of lading constitutes prima facie evidence of fair opportunity.")). However, incorporation or direct reference to the COGSA limitation in the bill of lading and incorporation of a published tariff that establishes a means to calculate rates for increased value constitutes sufficient notice to the shipper and fair opportunity to declare a higher value and pay additional freight. *Brown & Root*, 648 F.2d at 424.

The bill of lading in this case included a space for plaintiff to declare a higher value and referred the shipper to Clause 5.C.4 and the Tariff in the terms and conditions attached to the bill of lading. Dkt. 14, Ex. A. Within the terms and conditions attached to the bill of lading, Clause 2 incorporated the "CARRIER'S TARIFF" and provided that "[c]opies of the relevant provisions of the applicable Tariff are obtainable from the Carrier or his agents, upon request." *Id.* The Tariff was also on file with the Federal Maritime Commission. *Id.* at Ex. F. Further, Clause 5 of the bill of lading set out the terms with respect to "CARRIER'S RESPONSIBILITY." *Id.* at Ex. A. The

9

relevant portion stated "compensation shall in no circumstances whatsoever and howsoever arising exceed U.S. Dollar 500 per package or unit lost or damaged." *Id.* Finally, under the title "Ad Valorem" of the Tariff, the shipper was notified "[h]igher compensation may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper, which exceeds the limits laid down in this clause, has been stated in this Bill of Lading and extra Freight paid if required. In that case the amount of the declared value shall be substituted for those limits." Dkt. 27, Ex. V. Based upon the direct reference to the COGSA limitation, the incorporation of the Tariff into the bill of lading, which was made available to the shipper upon request, and the space in the bill of lading to declare a higher value, Nordana has met its burden showing that it offered plaintiff a fair opportunity to declare a higher value and avoid the liability limitation.

Plaintiff must now prove that it did not have a fair opportunity to declare a higher value. *Brown & Root*, 648 F.2d at 424; *STUTTGART EXPRESS*, 711 F.2d at 622. Plaintiff relies on language used in the tariff, obtained during discovery, that may suggest another tariff existed governing Nordana's freight rates. Plaintiff's interpretation of the tariff's language, however, does not prove that it was not given a fair opportunity to declare a higher value for its cargo. It remains undisputed that the face of the bill of lading provided a space for declared value, with reference to the COGSA limitation in the terms and conditions, which fully advised plaintiff of the right to avoid the limitation. Plaintiff was given the opportunity to declare a higher value, and if plaintiff had done so, it would have triggered Nordana providing additional freight charges and deciding whether it would transport the cargo for a higher value. Plaintiff chose not to declare a higher value and did not consult Nordana regarding its tariff or inquire regarding additional freight charges. While every detailed rate may not have been provided in the Tariff or bill of lading, plaintiff was not denied a fair opportunity to declare a higher value. *See Salco Mar. & Logistics Sal v. OCEAN ATLAS M/V*, 2013 WL 5592943, *3 (E.D. La. Oct. 10, 2013) (Despite the tariff being "exceedingly difficult to access," shipper was still provided a fair opportunity to declare higher value.); *General Elec. Co. v. M/V*

10

*NEDLLOYD*, 817 F.2d 1022, 1029 (2d Cir. 1987) ("[T]he language on the back of the [bill of lading] incorporating COGSA's provisions and the space for declaring excess value on the front are sufficient notice of the limitation of liability and the means of avoiding it."). Therefore, the terms of the bill of lading and the incorporated tariff afforded plaintiff an opportunity to declare an increased value and pay a higher freight charge.

    C.    *Geographic Deviation and Additional Discovery*

Plaintiff also contends that the liability limitation should not be afforded to Nordana because Nordana has not fully responded to discovery requests aimed at determining whether the M/V VEGALAND unreasonably deviated from its customary service route. Plaintiff maintains if the vessel unreasonably deviated from its route, Nordana should not be entitled to limit its liability.

Geographical deviation refers to a voluntary departure, without necessary or reasonable cause, from the regular and usual course of a voyage. *M/V ARAGUA*, 756 F.2d at 1157-58 (citing *Hostetter v. Park*, 137 U.S. 30, 40, 11 S. Ct. 1 (1890)) (internal quotations omitted). Any unreasonable deviation will deprive the carrier of any limitation of liability in the contract of carriage, including COGSA's $500 per package limitation. *Id.* at 1159. However, a reasonable deviation will not cause a shipper to lose its protection from limited liability. *Constructores Tecnicos, S. de R.L. v. Sea-Land Serv., Inc.*, 945 F.2d 841, 844-45 (5th Cir. 1991). "[S]tops at a vessel's customary ports of call, whether or not the bills of lading list those ports, cannot constitute deviations so long as the carrier has made those stops known to the shipper or the shipping community generally through advertisement, publication, or other means." *Great Am. Ins. Cos. v. M/V ROMERAL*, 934 F. Supp. 744, 747 (E.D. La. 1996) (quoting *Goya Foods, Inc. v. S.S. ITALICA*, 561 F. Supp. 1077, 1086 (S.D.N.Y. 1983)). Plaintiff must establish that a deviation occurred before the burden shifts to the carrier to show that its conduct was reasonable. *C.A. La Seguridad v. Delta S.S. Lines*, 721 F.2d 322, 324 (11th Cir. 1983) (applying Fifth Circuit precedent); *Spartus Corp. v. S/S YAFO*, 590 F.2d 1310, 1314 (5th Cir. 1979).

11

Plaintiff has not established a genuine issue of material fact with regard to whether a geographic deviation occurred during the relevant voyage. In its discovery responses, Nordana states that it was not in control of the navigation of the M/V VEGALAND and that there are no documents in its possession of historical published or advertised customary routes for the M/V VEGALAND. Dkt. 27, Exs. G, T. Nordana did, however, provide the route of the M/V VEGALAND for the relevant voyage and referred to its website reflecting its customary service schedule from the Mediterranean to the United States, which includes the same ports of call as the relevant voyage. Dkt. 27, Exs. D, K; Dkt. 28, p. 11 n.2. Based on this record, plaintiff has failed to show that a deviation occurred.

Plaintiff asks the court to deny Nordana's partial summary judgment on this basis and grant plaintiff additional discovery, "which may include the necessity of deposing the master and possibly other employees of the Defendant that did have responsibility for the vessel's navigation." Dkt. 27, p. 25. Plaintiff asked for this relief on August 5, 2013. Discovery closed in this case on April 28, 2014. Plaintiff has not supplemented the record, or otherwise moved to compel any documents which it claims Nordana failed to produce regarding geographic deviation. The court will not deny Nordana's partial summary judgment or defer ruling for plaintiff to conduct additional discovery when the plaintiff has not shown any reason for failing to conduct this additional discovery during the discovery period. Because plaintiff has failed to create a genuine issue of material fact with regard to any deviation that occurred during the relevant voyage, the court does not find that Nordana loses the protection of the COGSA limitation of liability.

    D.    *Additional Grounds*

Plaintiff also offers several additional arguments related to Nordana's liability and defenses for improper loading and stowing and spoliation. However, these arguments are not relevant to the grounds posited for partial summary judgment, but rather involve a determination of liability, applicable exemptions from liability, and cause of damage. *Sabah Shipyard Sdn. Bhd. v. M/V*

*HARBEL TAPPER*, 178 F.3d 400, 409-10 (5th Cir. 1999). The only issues considered by this court are whether Nordana is entitled to limit its liability under COGSA, whether Nordana provided plaintiff a fair opportunity to declare a higher value for its cargo, and whether an unreasonable geographic deviation would preclude Nordana from limiting its liability.

## IV. Conclusion

For the reasons stated herein, the court will GRANT Nordana's motion for partial summary judgment (Dkt. 14) and DENY plaintiff's motion for partial summary judgment (Dkt. 27). The court finds that the melt shop constitutes a single package under COGSA, thereby limiting Nordana's liability to $500 for the damage sustained by the melt shop.

It is so ORDERED.

Signed at Houston, Texas on May 13, 2014.

_____
Gray H. Miller
United States District Judge